## C. C. HEATH, GARNISHEE, v. JOHN JORDT.

Decided March 5, 1903.

**Garnishment—Judgment by Default—Diligence—Certiorari to County Court.**

Where the action was in the justice court against a nonresident, with an ancillary garnishment, and judgment by default was rendered against the defendant in the main suit, and also against the garnishee, upon imperfect and incomplete service by publication upon the nonresident, the garnishee, against whom no judgment could have been taken until judgment against the main defendant, was not wanting in diligence in failing to anticipate that a voidable judgment would be rendered in the main suit, and it appearing that the judgment against him was unjust, he was entitled to a certiorari and a trial de novo in the county court.

Appeal from the County Court of Nueces. Tried below before Hon. W. B. Hopkins.

*D. McNeil Turner,* for appellant.

*J. C. Scott,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This appeal is from a judgment sustaining exceptions to a petition for certiorari to the Justice Court for Precinct No. 1 of Nueces County, filed in the court below by the appellant on March 31, 1902. The allegations of the petition are in substance as follows:

"That on December 2, 1901, appellee Jordt filed suit in said Justice Court of Precinct No. 1 of Nueces County against one Clay on a liquidated demand for $162.13, interest and attorney's fees, and as ancillary thereto, sued out a writ of garnishment against appellant, which writ was issued and served upon appellant on December 14, 1901. That on January 2, 1902, affidavit for citation to said Clay by publication was filed in said suit, and that such citation was issued by said justice on January 2, 1902, and only returned and filed on January 28, 1902, showing service by publication of the 3d, 10th, 17th and 24th days of January, 1902.

"That on February 24, 1902, judgment by default was entered against said Clay in the main suit, for $188.10 and costs; and against appellant Heath in the ancillary suit for same amount, interest and costs of both proceedings. That the judgment against Clay was void in that same was rendered upon service of published citation imperfect and incomplete at the said February term, 1902, at which term said Clay was not required to answer, and that likewise the judgment against appellant was void. That injustice was done appellant in said proceeding, and it would be unconscionable to compel him to pay said debt of said Clay, for the reason that 'Neither at the time of the service of the said writ, nor at any time before or since said date was he, or is he now, indebted to said Clay in any sum of money; that he did not then have, and at no time since has he had, and has not now, in his possession any effects of

said Clay; and he did not them know, and has not since known, and does not now know of any persons who were or are indebted to said Clay, or have or had effects of said Clay in their possession;' but on the contrary, 'at the time of the service of said writ of garnishment, said Clay was and is now indebted to him, appellant, in the sum of $3850, which was then due and unpaid.' That said Clay is wholly insolvent, and is without property subject to execution within his knowledge, and that, if forced to pay off said inequitable judgment, he would be without redress or adequate remedy at law against said Clay. That it was through no laches, default or neglect on his part that he did not appear and answer under oath said writ of garnishment as therein directed, and that it was through no fault or negligence on his part that he did not present the defenses set out above upon the trial of said garnishment proceeding in said justice court; and in this connection he alleges that immediately after the service upon him of said writ of garnishment he consulted with D. McNeil Turner, a practicing attorney of Corpus Christi, Texas, as to his defenses and employed said attorney to prepare his answer to said writ so as to set forth the matters of defense embraced in the three paragraphs aforesaid; that he was then advised by his said attorney that he was not required by law to answer at the December term, 1901, of said justice court, as defendant Clay had not been served with citation; that on or about the 15th day of January, 1902, having seen the published citation of defendant Clay in the Corpus Christi Caller, he again spoke to his said attorney and urged and requested him to prepare his answer and defense to said writ, and that he was there informed by said attorney that service of said published citation would not be complete so as to require defendant Clay to answer before the March term of said justice court, and that as no judgment could be rendered against Clay in the suit before the first day of March term, 1902, therefore no judgment could be rendered against plaintiff in the garnishment case against him; and that, as petitioner 'had sixty days or more to answer, there was no hurry, and that petitioner need not worry; he (his said attorney) would prepare the answer and have petitioner make oath to it in ample time;' that petitioner is not a lawyer, and being ignorant of the requirements of law and the forms and proceedings in a garnishment suit, he was necessarily forced to employ counsel as to his answer and the proper preparation thereof; that relying on the skill and ability of his attorney, and in the truth and correctness of his said statements, counsel and advice, petitioner did not appear and answer said writ under oath as aforesaid; that he did not file a motion for new trial nor a motion to set aside said judgment in said justice court against him within ten days after the rendition thereof, nor did he give notice of appeal therefrom within the time required by law, because the truth is he did not know and did not learn, and because his said attorney did not know and did not learn, of the rendition and entry of said judgment, until petitioner was informed thereof by J. C. Scott, attorney for plaintiff Jordt, on the 21st day of March, 1902, twenty-five days

after said judgment entry, and in verification of the two preceding paragraphs hereof he submits herewith the affidavit of his said attorney which he prays to be considered a part hereof. That through no failure or default on his part he has been deprived of a good and meritorious defense to said garnishment suit against him, and that it is unjust and inequitable to impute to him the mistakes, oversight or negligence of his said attorney. That, the premises being considered, petitioner prays that the writs of certiorari and supersedeas issue to Joseph Dunn, justice of the peace of precinct No. 1 of Nueces County, to stay all further proceedings in said cause, etc."

To the above petition was attached the following affidavit:

"The State of Texas, County of Nueces. I, D. McNeil Turner, attorney at law, do solemnly swear that I prepared and have read the attached application of C. C. Heath, for writ of certiorari, and that the facts stated in paragraphs 7 and 8 are true; that believing that no judgment against the debtor J. H. Clay would be urged or could be legally rendered in the main suit until the March term of said court, 1904, and knowing that no judgment by default or otherwise could be rendered against said C. C. Heath until after judgment rendered against said Clay, and knowing that said Heath, under the statute, had a right to answer said writ of garnishment at any time before judgment by default was actually pronounced, I, as said Heath's attorney, advised and stated to him as set out in said paragraph number 7 of his application; that so believing and knowing, then and now, I did not prepare or cause to be filed the answer and defense of said Heath to said writ, though urged thereto by him; and that whatever of default, failure, laches or negligence there may have been in the premises, or how inexcusable same may appear, such default, failure, laches or negligence is directly chargeable to me, and the same was not the fault, failure or neglect of said C. C. Heath. So help me God. D. McN. Turner.

"Sworn to and subscribed before me this the 27th day of March, A. D. 1902. G. W. Westervelt, Notary Public, Nueces County, Texas."

The only question for our decision is whether the allegations of this petition show that the injustice complained of was not caused by the inexcusable neglect of the appellant. To state the question differently, do the allegations of the petition show a sufficient excuse for appellant's failure to answer the writ of garnishment before judgment by default was rendered against him in the justice court?

While the writ of garnishment commanded the appellant to answer at the next term of the court, he could under the law file his answer at any time before the trial of the case. Ryburn v. Nail, 4 Texas, 305; Moore v. Jones, 6 Texas, 227; City of Jefferson v. Jones, 74 Texas, 635.

No judgment could be taken against the garnishee until after plaintiff had obtained a judgment against the original defendant. The defendant Clay was a nonresident, and was cited by publication. The citation to Clay was not published for the full time required by law

prior to the January term of the court, and service was therefore not complete until the February term.

The statute directs that in suits by publication no trial shall be had until the second term after the completion of service.

Under these facts the judgment in favor of plaintiff against Clay could not have been properly rendered until the March term of the justice court.

While the judgment rendered at the February term was not void but only voidable, and appellant being a stranger thereto can not question its validity, it is proper to consider its voidable character in determining the question, as to whether a person of ordinary prudence should have anticipated that plaintiff would have procured the rendition of such judgment. If a person of ordinary prudence, knowing all of the facts, would have presumed, as appellant's counsel did, that plaintiff would not procure the rendition of said judgment at the February term of the court, then it can not be said that his failure to anticipate the rendition of such judgment and to file an answer for appellant on or before the first day of said term was inexcusable neglect.

Judgments are not usually rendered upon imperfect and insufficient service, and a plaintiff would not ordinarily knowingly procure the rendition of a voidable and inconclusive judgment. The facts which rendered the service against Clay incomplete were known to appellant's attorney and must have been known to the attorney for the appellee. With the knowledge of these facts in his possession we do not think that it can be said that appellant's attorney was guilty of inexcusable neglect in not anticipating that appellee would procure a judgment against Clay at the February term of the court, and in failing to file an answer for appellant before the first day of said term. According to the allegations of the petition great injustice was done appellant by the judgment of the justice court, and we think, under the facts alleged, that said injustice was not caused by the inexcusable neglect of appellant or his attorney. The attorney for appellant was misled by the unusual and irregular course pursued by the appellee in obtaining a premature and voidable judgment against the original defendant, and did not learn of the rendition of said judgment and the judgment by default against him, until the time in which a motion for a new trial or to set aside the judgment by default could have been filed in the justice court had expired. Under the facts alleged we think the appellant was entitled to a certiorari and to have a trial de novo in the county court, and the court below erred in sustaining the exceptions to the petition and dismissing the suit. Parlin v. Bellows, 44 S. W. Rep., 593. The judgment of the court below will be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*